UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Timothy A. Costley,

Plaintiff,

vs. MEMORANDUM ORDER

Thibodeau, Johnson & Feriancek, PLLP, and David M. Johnson and J.D. Feriancek, individually and in their capacity as Trustees,

Defendants. Civ. No. 01-602 (RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 7th day of December, 2001.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by Title 28 U.S.C. §636(c), upon the Defendants' Motion to Dismiss, under Rule 12(b)(6), Federal Rules of Civil Procedure, and upon their Motion for Attorney's Fees. A Hearing on the Motions was conducted on August 23, 2001, at which time, the Plaintiff Timothy A. Costley ("Costley") appeared by Gena A. Braaten, Esq., and the Defendants Thibodeau, Johnson & Feriancek, PLLP ("the Law Firm"), and David M. Johnson, and J.D. Feriancek, both individually, and in their capacities as Trustees, appeared by Mark A. Fredrickson, Esq.

FILED DEC 07 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD_____
DEPUTY CLERK J.H.

For reasons which follow, we grant the Defendants' Motion to Dismiss in part, and we deny the Defendants' Motion for Attorney's Fees.

## II. Factual and Procedural History

Costley was formerly a partner in the Law Firm, which was formed on January 1, 2000. Prior to that time, the four named partners had worked together in another firm -- Johnson, Killen, Thibodeau & Seiler, P.A. ("Johnson Killen"). On December 15, 2000, the Law Firm established a pension and profit-sharing plan ("the Plan"), which was made retroactive to January 1, 2000 -- the date on which the Law Firm was formed. Vesting under the Plan is "graded," with the percentage of vesting increasing as the years with the Law Firm increased, and with a participant becoming 100% vested after six or more years of "service."[1]

On February 16, 2001 -- approximately two months after the Plan was adopted -- Costley resigned his employment with the Law Firm. Upon his resignation, he demanded that the Defendants transfer to him the amounts allegedly allocated to his account under the

[1]A Plan participant's "vested" benefit refers to the portion of his or her normal retirement benefit which is "nonforfeitable," or unconditional and legally enforceable against the Plan. See, Title 29 U.S.C. §1002(19); see also, Jefferson v. Vickers, Inc., 102 F.3d 960, 963 (8th Cir. 1996)("Under the terms of ERISA, a 'vested right' is one that is 'nonforfeitable.'"), citing Title 26 U.S.C. §411(a) (2).

Plan which, he claims, approximates $24,300.00. Costley contends that he is entitled to the funds because he had six years of service under the Plan, which was comprised of the five years he had worked for Johnson Killen, and the one year he had worked for the Law Firm. The Defendants refused to award such a payment, however, and they deny that Costley has satisfied the vesting requirements of the Plan, since he had only worked at the Law Firm for a little over one year. The Defendants further deny that the Plan allows a crediting, toward vesting, of the time that Costley worked at Johnson Killen.

As a consequence of that denial of benefits, Costley commenced this lawsuit against the Defendants. Specifically, in Count I of his Complaint, Costley alleges that he has been denied benefits, which are owing to him under the Plan, thereby violating the Employee Retirement Income Security Act, Title 29 U.S.C. §§1001 et seq. ("ERISA"). In Count II, he alleges that, under ERISA, the Defendants owed him a fiduciary duty, which they breached by failing to distribute the contributions which were allocated to him under the Plan. In the alternative, in Counts III and IV, Costley claims that, if the Plan is not an ERISA qualified plan, then the Defendants have breached a unilateral contract under Federal and State common law.

In lieu of an Answer, the Defendants have moved to dismiss Costley's Complaint, as they claim that, under the unambiguous terms of the Plan, Costley was not vested at the time he resigned from the Law Firm and, therefore, he was not entitled to the funds that he has demanded. Furthermore, they claim that the Federal and State common law claims, which Costley alternatively asserts, are preempted by ERISA. Lastly, the Defendants seek an award of attorney's fees arising from their Motion to Dismiss.

III. Discussion

A. Standard of Review. In bringing their Motion to Dismiss, the Defendants contend that Costley's Complaint fails to state a claim upon which relief can be granted. See, Rule 12(b)(6), Federal Rules of Civil Procedure. In reviewing a Complaint under a Rule 12(b)(6) Motion, we must consider all of the facts alleged in the Complaint as true, and construe the pleadings in a light most favorable to the plaintiff. See, e.g., Brotherhood of Maintenance of Way Employees v. Burlington Northern Santa Fe Railroad, 270 F.3d 637, 6388 (8th Cir. 2001). "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking, 140 F.3d 797, 799

(8th Cir. 1998); Helleloid v. Independent School Dist. No. 361, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998).

B. Legal Analysis. Since they involve different considerations, we separately address Costley's ERISA claims, from those he asserts under Federal and State common law, and we then proceed to the Defendants' request for an award of attorneys' fees and costs.

1. Costley's ERISA Claims. By filing a preemptive Motion to Dismiss, the Defendants frame the issues presented as involving a construction of the Plan and, particularly, the portions of the Plan which explicate a participant's vesting of benefits. Accordingly, the Defendants emphasize the "graded vesting" provisions, and the fact that Johnson Killen is not a "predecessor," or an "affiliated" employer, as those terms are defined in the Plan. The Defendants then invite us to review their denial of Costley's

benefit claim under the indulgent light of an abuse-of-discretion standard of review, anticipating that such a review would favor their effort to dismiss Costley's ERISA allegations.

In contrast, Costley opposes a dismissal by framing the issues presented as involving the intent of the authors of the Plan, particularly as that intent relates to the crediting, for vesting purposes, of service before the Law Firm created the Plan. While the arguments, which the parties have so framed, tangentially meet on occasion, in many ways they are "two ships passing in the night." For example, Costley contends that the Plan does not instill any discretion in the Trustees to interpret the meaning of the Plan's provisions, and that, even if such discretion were afforded, the Trustees labored under a conflict of interest which would create a heightened standard of review, that they generally ascribe as being de novo. The Defendants heartily disagree, and encourage the deployment of a highly deferential, abuse-of-discretion standard. While the respective arguments of the parties are intriguing -- or, perhaps, beguiling -- properly framed, we must construe the allegations of Costley's Complaint, and then determine whether those allegations will support a viable claim which could entitle Costley to relief.

As an attachment to his Complaint, Costley has attached the "Adoption Agreements," which contain certain portions of the Plan.

In particular, Costley relies on that portion of the Adoption Agreements which records the Law Firm's affirmative response to the following question:

> Vesting Service: Will Vesting Service include years before the Employer first maintained the Plan (or predecessor plan)?

Costley contends that, by assenting to this question, the Law Firm was agreeing to credit the years that any Plan participant had served at Johnson Killen for vesting purposes. As alleged in Costley's Complaint:

> The defendant law firm checked "Yes" because the partners intended years of service for purposes of vesting to include years of service at the prior law firm. The purpose of including years of service at the prior law firm was to make sure that the partners, especially Thibodeau, who was close to retirement age, would be 100% vested at the inception of the Plan. The graded vesting was chosen so that new employees would not be fully vested until they had been employed with the firm for six years.

Complaint, at p. 13, ¶16.

In accepting this assertion as true, as we must, we are also instructed, by the governing law of this Circuit, to construe "the complaint liberally in the light most favorable to the plaintiff." Carpenter Outdoor Advertising Co. v. City of Fenton, 251 F.3d 686, 688 (8th Cir. 2001).

Drawing reasonable inferences from the facts alleged by Costley, we have an assertion of drafting intent, as expressed by one

of the Plan's Trustees, who also served as one of the creators of the Plan, and who filed his claim for benefits, predicated on that asserted intent, no more than a couple of months after the Plan was formally adopted. Given these facts, the Defendants' Motion to Dismiss can only be successful if we conclude that it appears, beyond a reasonable doubt, that Costley can prove no set of facts that would entitle him to relief. See, Anderson v. Franklin County, 192 F.3d 1125, 1131 (8th Cir. 1999), citing Springdale Educ. Ass'n v. Springdale Sch. Dist., supra at 651. In contending that no such "set of facts" here exists, the Defendants maintain that Costley's "allegations are contrary to the plain language of the Plan."[2] Defendants' Memorandum, at p. 9.

The Plan is comprised of the Adoption Agreements, which were attached to Costley's Complaint as Exhibit 1, as well as the Plan

---

[2]We wish to make plain that, given the indulgence of "notice pleading," we are not aware of the specific factual bases for Costley's assertion, that the Law Firm's Plan was predicated upon the crediting of service, from pre-plan employment, for vesting purposes. If, as the Defendants claim, there is no factual basis for Costley's allegations concerning the Law Firm's intent, then the Defendants are not without resort to seek summary relief under the governing law of this Circuit. We merely note, without deciding, that the unique nature of a start-up law firm, whose key employees were drawn from an established firm, may predispose to some assurances to the employees concerning benefits which could well have been far more assured before any transfer the to "start-up" organization. Again, we are obligated, by the pertinent standard of review, to deal with no more than reasonable inferences from the facts that were pled.

Document, which the Defendants filed with the Court as Exhibit 1 to the Affidavit of Doreen A. Mohs. See, Plan Document, at p. 6, Section 1.22 (defining the Plan as the "Plan Document and the related Adoption Agreement"). In referring to the Plan Document, which the Defendants filed in support of their Motion, we expressly do not convert the Defendants' Motion to one for Summary Judgment, because "the plaintiff['s] claims are based solely on the interpretation of the documents [submitted] and the parties do not dispute the actual contents of the documents." Jenisio v. Ozark Airlines, Inc. Retirement Plan, 187 F.3d 970, 972 n. 3 (8th Cir. 1999), citing Silver v. H & R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997); see also, Force v. ITT Hartford Life and Annuity Ins. Co., 4 F. Supp.2d 843, 849 n. 4 (D. Minn. 1998).

As a result of the parties' respective submissions, we have before us the entirety of the Plan which, upon our close review, satisfies us that, notwithstanding the Defendants' view to the contrary, Costley's allegations concerning the intent of the framers of the Plan are not, necessarily, "contrary to the plain language of the Plan." Although the Defendants' Memorandum, and Reply Memorandum, reference and quote from various portions of the Plan Document, at no point do the Defendants reference, let alone discuss, Section 1.30(c), which provides as follows:

> Pre-Plan Service. If the Employer so elects in the Adoption Agreement, Vesting Service will be credited (under the rules of this Plan Document) for computation periods before the Employer first maintained the Plan (or a predecessor plan). Otherwise, such prior computation periods shall be disregarded.

Plan Document, at p. 6, Section 1.30(c).

Here, according to Costley's factual allegations, the Law Firm so elected, in the Adoption Agreement, to have "Vesting Service" credited "for computation periods before the Employer first maintained the Plan." "Vesting Service," as defined by the Plan Document, "means a measure of an Employee's service with the Employer and its Affiliates * * * which is equal to the number of computation periods during which the Employee has at least 1,000 Hours of Service, subject to the following rules," which include the option of crediting "Vesting Service" for computation periods before the Employer first maintained the Plan * * *." Id., Section 1.30.

We see no prohibition, at least facially, in any provision of the Plan which precludes the framers of the Plan from permitting the crediting of "Vesting Service," as Costley alleges the framers did here, for "computation periods before the Employer first maintained the Plan," and the Defendants draw none to our attention. Rather, the Defendants would have us interpret the Plan Document's definitions of "Affiliate," "Employer," "Hours of Service," and "Vesting Service" -- but without reference to the "Pre-Plan Ser-

vice" provision that we have referenced and quoted -- as precluding any election to allow pre-plan service to be credited for vesting purposes, as Costley has alleged was adopted by the Law Firm.[3] Nor do the Defendants meaningfully demonstrate that any provision of the Plan, as adopted by the Law Firm, would have to be differently worded if, as Costley alleges, the pre-plan service option had been elected by the Defendants, so as to encompass years of service at Johnson Killen.

Instead, the Defendants assert that they construe the meaning of the positive response on the Adoption Agreements to be something other than as Costley alleges, and that, therefore, since they denied Costley's claim on the basis of that construction, we must, in effect, accept their interpretation deferentially.[4] Notably,

---

[3]In effect, the Defendants assert that Costley is mistaken about his perception of the Law Firm's intent, because of the Definitions contained in the Plan. Nonetheless, "Vesting Service" is expressly made subject to the "Pre-Plan Service" provision of Section 1.30(c), which facially allows the Law Firm to compute "Vesting Service" differently than as it is defined in Section 1.30. While we recognize that other provisions impact upon who is an "Employer," and "Affiliate," and so forth, under the Plan, we do not understand any of these provisions to impair the authority of the Law Firm, under Section 1.30(c), to credit "pre-plan service" -- even with a different employer -- if that were the Law Firm's election. If we are wrong in this reading, we are confident that the Defendants will address the matter in a subsequent Motion for Summary Judgment.

[4]Given the result we reach, we express no view as to the proper standard of review, under <u>Firestone Tire and Rubber Co. v.</u>
(continued...)

the Defendants provide no authority for such a transubstantiation -- by which a conflicting factual allegation, by one disputant in the context of a Motion to Dismiss, can be transmuted into an adjudication of a disputed, historic fact, and we are aware of

---

[4](...continued)
Bruch, 489 U.S. 101, 115 (1989), and its progeny, that should ultimately be applied in this case. We note Costley's concern that, given the structure of the Plan -- with the Trustees also being beneficiaries -- the potential for a conflict exists, which could invoke a stricter standard of review than the abuse-of-discretion approach that the Defendants urge. On the other hand, the Defendants ably underscore that any such conflict would be tenuous if not wholly conjectural and, independently, we note the authority within this Circuit, that such structural "[i]ndicia of bias can be negated by 'ameliorating circumstances,' such as '"equally compelling long-term business concerns"' that militate against improperly denying benefits despite the dual role." Schatz v. Mutual of Omaha Ins. Co., 220 F.3d 944, 947-48 (8th Cir. 2000), citing Barnhart v. UNUM Life Ins. Co., 179 F.3d 583, 587-88 (8th Cir. 1999), quoting, in turn, Farley v. Arkansas Blue Cross & Blue Shield, 147 F.3d 774, 777 (8th Cir. 1998).

Necessarily, we leave to another day the application of the proper standard of review, as the Record presented, so circumspect as it is, does not meaningfully allow a principled application of the two-pronged analysis of Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998), nor a disciplined application of the Finley factors. See, Finley v. Special Agents Mutual Benefit Association, Inc., 957 F.2d 617, 621 (8th Cir. 1992); see also, Hawkeye Nat'l Life Ins. Co. v. Avis Industrial Corp., 122 F.3d 490, 497 (8th cir. 1997)(applying Finley factors); Hutchins v. Champion Int'l Corp., 110 F.3d 1341, 1343 (8th Cir. 1997). Indeed, while we perceive that the parties differ in their respective views as to the original intent that the Law Firm held with respect to the crediting of "pre-plan service," at least for vesting purposes, we are not certain that they have focused on any specific language of the Plan being ambiguous, if we accept, as we must, Costley's allegations of fact. On this abbreviated Record, it is sufficient to note that the issue of fact, concerning the intent of the Law Firm, precludes the dismissal the Defendants here seek.

none. We readily concede that "ERISA is a 'comprehensive and reticulated statute,' * * * and is 'enormously complex and detailed,'" Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 447 (1999), and we would not suggest that, independently, we have coursed through all of ERISA's provisions in search of some proscription which would prevent the implementation of the intent that Costley ascribes to the Defendants, but we also note that no such prohibition has been identified by any party.

Accordingly, on this Record, we deny the Defendants' Motion to Dismiss for, if we were to grant the same, we would deny to Costley the entitlement he is accorded, under the governing law, as to the truth of his factual allegations, and as to the reasonable inferences that necessarily draw from those allegations.

2. Costley's Federal and State Common Law Claims. The parties concede that the Plan, as formulated and applied by the Defendants, is governed by ERISA. As a cautionary measure, Costley alternatively alleged causes of action, apart from ERISA, in the event that, for whatever reason, ERISA does not apply. Since all parties acknowledge that ERISA does control, the common law actions for a unilateral breach of contract, whether under the Federal or State common law, are plainly preempted. See, Glenn v. Life Ins. Co. of North America, 240 F.3d 679, 681 (8th Cir. 2001)(ERISA preempts State common law claim for breach of contract), citing Mol-

asky v. Principal Mut. Life Ins. Co., 149 F.3d 881, 884 (8th Cir. 1998)(same); Slice v. Sons of Norway, 34 F.3d 630, 631-32 (8th Cir. 1994)("ERISA's civil enforcement provisions, set forth in 29 U.S.C. §1132(a), provide the exclusive remedy for participants or beneficiaries seeking to enforce their rights under an ERISA plan."), citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987); Kiefer v. Ceridian Corp., 976 F. Supp. 829, 845 (D. Minn. 1997) ("While federal courts are authorized to develop a federal common law under ERISA, see Pilot Life, 481 U.S. at 56, 107 S.Ct. at 1558; Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109-111, 109 S.Ct. 948, 953-54, 103 L.Ed.2d 80 (1989)(supplying standard of review to "fill this gap" left by the statute), Plaintiffs may not circumvent the statutory enforcement scheme by bringing freestanding claims for breach of contract and conversion when the statute itself adequately provided for those claims."), quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 258-60 (1993)("The authority of the courts to develop a 'federal common law' under ERISA * * * is not the authority to revise the text of the statute.").

Here, in Counts I and II of his Complaint, Costley has employed the civil enforcement remedies of ERISA to enforce his rights, as he alleges them under the Defendants' ERISA Plan, and, therefore, his breach of contract claims, whether under State or Federal common law, are preempted. Accordingly, we grant the

Defendants' Motion to Dismiss Counts III and IV of Costley's Complaint.

3. <u>The Defendants' Motion for Attorneys' Fees</u>. The Defendants seek an award of attorneys' fees under Title 29 U.S.C. §1132(g), which provides as follows:

> In any action under this subchapter * * * by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

Since we have denied the Defendants' Motion to Dismiss Costley's ERISA claims, the Defendants are not a prevailing party entitled to an award of fees under Section 1132(g). See, <u>Continental Assur. Co. v. Cedar Rapids Pediatric Clinic</u>, 957 F.2d 588, 594 (8th Cir. 1992). Therefore, we deny the Defendants' Motion for an award of attorneys' fees.

NOW, THEREFORE, It is --

ORDERED:

1. That the Defendants' Motion to Dismiss [Docket No. 3] is GRANTED, in part, and DENIED, in part.

2. That the Defendants' Motion for Attorney's Fees [Docket No. 3] is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE